1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

7

8

9

10

11

12

RICKEY A. BEAVER,

            Plaintiff,

v.

WESTERN STATE HOSPITAL, et al.,

            Defendants.

CASE NO. C10-5132 BHS

ORDER GRANTING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

13

14

15

16

17

     This matter comes before the Court on Defendant Shirley Deem, M.D. ("Dr.

Deem") and Western State Hospital's ("WSH") motion for summary judgment (Dkt. 39).

The Court has considered the pleadings filed in support of and in opposition to the

motion and the remainder of the file and hereby grants the motion for the reasons stated

herein.

18

         **I.**       **PROCEDURAL HISTORY**

19

20

21

22

     On March 3, 2010, Rickey A. Beaver ("Beaver") filed a 42 U.S.C. 1983 civil

rights complaint against Western State Hospital ("WSH") and Dr. Deem alleging that,

while civilly committed, they failed to provide him with adequate medical care, violating

his Eighth Amendment rights by inflicting pain and suffering and cruel and unusual

1   punishment.  Dkt. 3.  On May 11, 2012, WSH moved the Court to dismiss this matter on

2   its Eleventh Amendment immunity to suit, or alternatively, for failure to state a claim

3   under Fed. R. Civ. P. 12(b)(6).  Dkt. 14.  On June 21, 2010, this Court granted

4   Defendants' motion.  Dkt. 23.

5       Beaver appealed to the Ninth Circuit.  On November 2, 2011, the Ninth Circuit

6   Court of Appeals affirmed the dismissal of the claims against WSH and Dr. Deem in her

7   official capacity, and remanded the claims against Dr. Deem in her individual capacity,

8   finding both that Beaver's "allegations that Dr. Deem knowingly prescribed him

9   medication to which he was allergic and thereafter knowingly failed for several weeks to

10  prescribe pain medication for his chronic pain were sufficient to allege a violation of a

11  clearly established constitutional right" and that a motion to dismiss at this early stage of

12  the proceedings was premature.  Dkt. 29 at 2-3.

13      Therefore, the case that remains is a lawsuit by a patient at WSH challenging the

14  medical attention he received during his commitment from the remaining Defendant, Dr.

15  Deem.  On January 7, 2013, Defendants filed the instant motion for summary judgment.

16  Dkt. 39.  On the same day, Defendants filed a *Rand*[1] notice and sent it to Beaver.  Dkt.

17  41.  On January 30, 2013, Beaver filed a response in opposition to the motion.  On

18  February 1, 2013, Defendants filed a reply.  Dkt. 43.

19

20      [1] *Rand* notices are served and filed pursuant to *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th

21  Cir. 1998) (Rand notices are served concurrently with motions to dismiss and motions for
    summary judgment so that pro se prisoner plaintiffs will have fair, timely and adequate notice of

22  what is required of them in order to oppose those motions).

## II.     FACTUAL BACKGROUND

On December 11, 2009, Beaver was admitted to WSDH. Dkt. 40 at 1.  In addition to his psychiatric issues, Beaver suffers from osteoarthritis, which results in chronic joint pain. Dkt. 40 at 1-2.  Beaver requested that his pain be treated with "vikiden [sic] and ... methadon [sic]," but  those medications were determined to be inappropriate given their addictive nature and Beaver's prior history of drug abuse.  Dkts. 3 at 3 & 40 at 3.

Instead, Beaver was initially prescribed acetaminophen on an "as needed" basis for  the pain from his osteoarthritis.  Dkt. 40 at 2.  Acetaminophen is one of two preferred medications for treating osteoarthritis.  *Id*.  Nonsteroidal anti-inflammatory drugs (NSAIDs) are the other type of medication typically prescribed for osteoarthritis.  *Id*. Dr. Deem wanted to explore prescribing an NSAID for Beaver, but he had indicated that he was allergic to ibuprofen, which is an NSAID. *Id*.  Beaver requested that Dr. Deem allow him to sign an authorization of release of information form so that she could receive medical documentation to confirm his medical issues and to provide him with adequate medical care.  Dkt. 42 at 3-4.  According to Beaver, Dr. Deem declined to allow him to sign such a release.  *Id*. at 4.  However, Beaver states that on January 5, 2010, Dr. Xu allowed him to sign an authorization release of information form permitting WSH to review his records from his primary care physician.  *Id*. at 5.

Dr. Deem, in consultation with a clinical pharmacologist, determined that Beaver's symptoms after taking the ibuprofen, were a side effect of taking it on an empty stomach, and not an allergic reaction to it.  *Id*. at 2.  Nevertheless, Dr. Deem did not prescribe Beaver ibuprofen, but instead prescribed a different NSAID, naproxen.  *Id*.

1   Four days after being prescribed naproxen, Beaver complained of abdominal pain.  *Id.*

2   Another doctor at Western State Hospital, Dr. Quraishi, determined that Beaver was

3   intolerant to naproxen, and discontinued the medication.  *Id*.  Dr. Deem concurred with

4   Dr. Quraishi's diagnosis the next day. *Id*. at 2-3. On December 17, 2009, Beaver

5   confirmed that his stomach pain had gone away.  *Id*.  That same day, Dr. Deem added a

6   prescription for analgesic balm ointment to the prior prescription for acetaminophen.  *Id*.

7   at 3.  On December 28, 2009, Dr. Deem also prescribed physical therapy for Beaver.  *Id*.

8         Over the next two months, several additional medications were prescribed to

9   Beaver for his chronic joint and muscle pain.  *Id*.  During this period, Beaver was seen by

10  Dr.  Deem seven different times, and he was also seen by other Western State Hospital

11  physicians. *Id*.

### III.   DISCUSSION

**A.     Summary Judgment Standard**

14        Summary judgment is proper only if the pleadings, the discovery and disclosure

15  materials on file, and any affidavits show that there is no genuine issue as to any material

16  fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

17  The moving party is entitled to judgment as a matter of law when the nonmoving party

18  fails to make a sufficient showing on an essential element of a claim in the case on which

19  the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

20  323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole,

21  could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec.*

22  *Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986) (nonmoving party must

present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc*., 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc*., 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.   Application of Summary Judgment Standard**

Defendants argue that Beaver was not denied a right of constitutional significance. Dkt. 39 at 4. Defendants maintain that Beaver's claims against Dr. Deem must fail because he fails to demonstrate that she substantially departed from accepted professional judgment, practice or standards in treating him. *Id.* at 7. Additionally,

1   Defendants contend that although Beaver disagreed with the course of treatment he

2   received, a disagreement over a treatment does not invoke a right of constitutional

3   significance.

4        Beaver argues that Dr. Deem deviated from the standard of professional care

5   thereby violating his constitutional rights.  Beaver argues that she deviated from the

6   standard of care when: (1) she interfered with the treatment prescribed by his primary

7   medical doctor; (2) she refused to allow him to sign an authorization release form which

8   would allow her to review his medical condition and records from his primary doctor; (3)

9   she chose to take an easier and less efficacious course of treatment, which she considered

10  to be based on her professional judgment and which "caused [him] pain and suffering in

11  violation of [his] fourteenth amendment right to equal protection and due process right."

12  Dkt. 42 at 8.

13       Defendants reply that Beaver's submissions to the Court supporting his claims are

14  conclusory statements unsupported by facts, which are insufficient to show a genuine

15  issue of material fact for trial. Dkt. 43 at 1-2.

16       **1.    *Youngberg* Standard**

17       In *Youngberg*, the Supreme Court first recognized that involuntarily committed

18  persons have a constitutional right to "minimally adequate or reasonable training to

19  ensure safety and freedom from undue restraint."  *Youngberg*, 457 U.S. at 319.  The

20  court, however, cautioned against imposing expansive obligations on the states in their

21  care of such persons: "'the Constitution only requires that the courts make certain that

22  professional judgment in fact was exercised.  It is not appropriate for the courts to specify

ORDER - 6

1    which of several professionally acceptable choices should have been made.'"   *Id.* at 321.

2    The *Youngberg* court further explained the significant degree of deference to be afforded

3    the decisions of qualified professionals:

4           By so limiting judicial review of challenges to conditions in state
            institutions, interference by the federal judiciary with the internal

5           operations of these institutions should be minimized.… For these reasons,
            the decision, if made by a professional, is presumptively valid; liability may

6           be imposed only when the decision by the professional is such a substantial
            departure from accepted professional judgment, practice, or standards as to

7           demonstrate that the person responsible actually did not base the decision
            on such a judgment.

8
*Id.* at 322-23.  The *Youngberg* standard has been applied by the Supreme Court to

9
differing situations involving professional discretion, including to a program for civilly

10
committed sex offenders in Kansas.  *See Kansas v. Hendricks*, 521 U.S. 346 (1997).[2]

11
        Under *Youngberg*, a treating physician's medical treatment decisions are presumed

12
valid, and Beaver must show a substantial departure from accepted professional

13
judgment, practice, or standards to state a claim based on a specific action taken in

14
relation to treatment.  *Youngberg*, 457 U.S. at 323.  However, as Defendants argue,

15
Beaver has failed to submit such evidence.

16

17
_____

18
        [2] Circuit courts have also applied the *Youngberg* standard to involuntarily committed

19    psychiatric patients.  *See Kulak v. City of New York*, 88 F.3d 63, 75 (2d Cir. 1996) (applying the
      professional judgment standard to an involuntarily committed patient's claim that hospital

20    employees improperly medicated him and failed to monitor the effects of the medication); *see
      also Patten v. Nichols*, 274 F.3d 829, 842 (4th Cir. 2001) (holding that denial of medical care

21    claims asserted by involuntarily committed psychiatric patients must be measured under the
      *Youngberg* professional judgment standard).

22

1      Although Beaver states that Dr. Deem interfered with the treatment he received

2   from his primary provider and that she refused to allow him to sign an authorization

3   releasing his primary care physician's records to WSH, he fails to submit evidence by a

4   medical expert that the medical treatment he received from Dr. Deem amounted to a

5   substantial departure from accepted professional judgment, practice, or standards.

6   Instead, he continues to claim that Dr. Deem knowingly prescribed him a medication he

7   was allergic to, and that she failed to prescribe him pain medication for several weeks,

8   arguing in part that is what the Ninth Circuit found.  Dkt. 42 at 6.  However, Beaver

9   misreads the Ninth Circuit's opinion, which made no such factual findings.  The Ninth

10  Circuit held only that Beaver had pled facts sufficient to allege Dr. Deem's violation of a

11  clearly established constitutional right.  *See supra.* & Dkt. 29 at 2-3. In other words, his

12  allegations against Dr. Deem in her individual capacity survived a motion to dismiss.

13      Independent of Beaver's reliance on the Ninth Circuit's decision, he appears to

14  claim that his alleged allergy to ibuprofen constituted foreknowledge that naproxen

15  would cause him harm, and that Dr. Deem violated his constitutional rights by

16  prescribing it to him.  Yet, Beaver states that Dr. Xu permitted him to sign an

17  authorization releasing his records from his primary care doctor to WSH.  He thus

18  implies his prior records would demonstrate how Dr. Deem interfered with his medical

19  treatment or at least that he was allergic to NSAIDs. However, Beaver neither submits

20  those records nor any medical evidence to support his allegations that Dr. Deem's actions

21  departed from accepted professional judgment, practice, or standards.

22

### 2.    Conclusion

Based on the record before it, the Court concludes there is no genuine issue of material fact as to whether Dr. Deem knowingly prescribed Beaver medication to which she knew he was allergic such that it violated his constitutional right.  The record demonstrates that after Beaver indicated that he was allergic to ibuprofen, Dr. Deem formed a professional opinion that he was not allergic to it.  Nonetheless, she did not give Beaver ibuprofen; instead, she prescribed him naproxen. While Beaver had a reaction to naproxen, which he argues resulted from Dr. Deem's knowingly prescribing medication to which he was allergic in violation of his constitutional rights, he has submitted no evidence or legal argument to support that conclusory allegation.

Defendants argue that Beaver's only other surviving claim, that Dr. Deem failed to prescribe him pain medication for several weeks, is similarly unsupported.  Dkt. 43 at 2. Further, Defendants maintain that Beaver's disagreement with Dr. Deem's course of treatment is not sufficient to establish a genuine issue of material fact that she violated his constitutional rights. *Id*. at 2-3

The record shows that Dr. Deem prescribed acetaminophen for his pain, and supplemented that with an analgesic balm as well as physical therapy. Beaver chose not to avail himself of the mediation prescribed and now claims that Dr. Deem took a "less efficacious course of treatment" which caused him pain.  Dkt. 42 at 8. The uncontradicted evidence shows that Dr. Deem did not prescribe Beaver the medications requested because it was not medically appropriate given their addictive nature and his prior history of substance abuse. His disagreement with her course of treatment, absent medical

1    evidence supporting his claims, does not create a genuine issue of material fact that Dr.

2    Deem substantially departed from accepted professional judgment, practice or standards.

3    *Toguchi v. Soon Hwang Chung,* 391 F.3d 1051, 1059-60 (9th Cir. 2004) (holding that an

4    individual's disagreement with his course of treatment does not give rise to a 42 U.S.C. §

5    1983 claim).

6                                    **IV.   ORDER**

7            Therefore, it is hereby **ORDERED** that Defendants' motion for summary

8    judgment (Dkt. 39) is **GRANTED**, and this case is closed.

9            Dated this 12th day of February, 2013.

10

11

12                                    BENJAMIN H. SETTLE
                                      United States District Judge

13

14

15

16

17

18

19

20

21

22

ORDER - 10