UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RICKEY A. BEAVER,

    Plaintiff,

v.

WESTERN STATE HOSPITAL, et al.,

    Defendants.

CASE NO. C10-5132 BHS

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendant Shirley Deem, M.D. ("Dr. Deem") and Western State Hospital's ("WSH") motion for summary judgment (Dkt. 39). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

## I.    PROCEDURAL HISTORY

On March 3, 2010, Rickey A. Beaver ("Beaver") filed a 42 U.S.C. 1983 civil rights complaint against Western State Hospital ("WSH") and Dr. Deem alleging that, while civilly committed, they failed to provide him with adequate medical care, violating his Eighth Amendment rights by inflicting pain and suffering and cruel and unusual

ORDER - 1

1  punishment.  Dkt. 3.  On May 11, 2012, WSH moved the Court to dismiss this matter on

2  its Eleventh Amendment immunity to suit, or alternatively, for failure to state a claim

3  under Fed. R. Civ. P. 12(b)(6).  Dkt. 14.  On June 21, 2010, this Court granted

4  Defendants' motion.  Dkt. 23.

5  Beaver appealed to the Ninth Circuit.  On November 2, 2011, the Ninth Circuit

6  Court of Appeals affirmed the dismissal of the claims against WSH and Dr. Deem in her

7  official capacity, and remanded the claims against Dr. Deem in her individual capacity,

8  finding both that Beaver's "allegations that Dr. Deem knowingly prescribed him

9  medication to which he was allergic and thereafter knowingly failed for several weeks to

10 prescribe pain medication for his chronic pain were sufficient to allege a violation of a

11 clearly established constitutional right" and that a motion to dismiss at this early stage of

12 the proceedings was premature.  Dkt. 29 at 2-3.

13 Therefore, the case that remains is a lawsuit by a patient at WSH challenging the

14 medical attention he received during his commitment from the remaining Defendant, Dr.

15 Deem.  On January 7, 2013, Defendants filed the instant motion for summary judgment.

16 Dkt. 39.  On the same day, Defendants filed a *Rand*[1] notice and sent it to Beaver.  Dkt.

17 41.  On January 30, 2013, Beaver filed a response in opposition to the motion.  On

18 February 1, 2013, Defendants filed a reply.  Dkt. 43.

---

[1] *Rand* notices are served and filed pursuant to *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998) (Rand notices are served concurrently with motions to dismiss and motions for summary judgment so that pro se prisoner plaintiffs will have fair, timely and adequate notice of what is required of them in order to oppose those motions).

## II.     FACTUAL BACKGROUND

On December 11, 2009, Beaver was admitted to WSDH. Dkt. 40 at 1. In addition to his psychiatric issues, Beaver suffers from osteoarthritis, which results in chronic joint pain. Dkt. 40 at 1-2. Beaver requested that his pain be treated with "vikiden [sic] and ... methadon [sic]," but those medications were determined to be inappropriate given their addictive nature and Beaver's prior history of drug abuse. Dkts. 3 at 3 & 40 at 3.

Instead, Beaver was initially prescribed acetaminophen on an "as needed" basis for the pain from his osteoarthritis. Dkt. 40 at 2. Acetaminophen is one of two preferred medications for treating osteoarthritis. *Id*. Nonsteroidal anti-inflammatory drugs (NSAIDs) are the other type of medication typically prescribed for osteoarthritis. *Id*. Dr. Deem wanted to explore prescribing an NSAID for Beaver, but he had indicated that he was allergic to ibuprofen, which is an NSAID. *Id*. Beaver requested that Dr. Deem allow him to sign an authorization of release of information form so that she could receive medical documentation to confirm his medical issues and to provide him with adequate medical care. Dkt. 42 at 3-4. According to Beaver, Dr. Deem declined to allow him to sign such a release. *Id*. at 4. However, Beaver states that on January 5, 2010, Dr. Xu allowed him to sign an authorization release of information form permitting WSH to review his records from his primary care physician. *Id*. at 5.

Dr. Deem, in consultation with a clinical pharmacologist, determined that Beaver's symptoms after taking the ibuprofen, were a side effect of taking it on an empty stomach, and not an allergic reaction to it. *Id*. at 2. Nevertheless, Dr. Deem did not prescribe Beaver ibuprofen, but instead prescribed a different NSAID, naproxen. *Id*.

ORDER - 3

Four days after being prescribed naproxen, Beaver complained of abdominal pain. *Id.* Another doctor at Western State Hospital, Dr. Quraishi, determined that Beaver was intolerant to naproxen, and discontinued the medication. *Id.* Dr. Deem concurred with Dr. Quraishi's diagnosis the next day. *Id.* at 2-3. On December 17, 2009, Beaver confirmed that his stomach pain had gone away. *Id.* That same day, Dr. Deem added a prescription for analgesic balm ointment to the prior prescription for acetaminophen. *Id.* at 3. On December 28, 2009, Dr. Deem also prescribed physical therapy for Beaver. *Id.*

Over the next two months, several additional medications were prescribed to Beaver for his chronic joint and muscle pain. *Id.* During this period, Beaver was seen by Dr. Deem seven different times, and he was also seen by other Western State Hospital physicians. *Id.*

## III.   DISCUSSION

**A.   Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

1 present specific, significant probative evidence, not simply "some metaphysical doubt").

2 *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists

3 if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or

4 jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477

5 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

6 626, 630 (9th Cir. 1987).

7   The determination of the existence of a material fact is often a close question. The

8 Court must consider the substantive evidentiary burden that the nonmoving party must

9 meet at trial – e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477

10 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  The Court must resolve any factual

11 issues of controversy in favor of the nonmoving party only when the facts specifically

12 attested by that party contradict facts specifically attested by the moving party.  The

13 nonmoving party may not merely state that it will discredit the moving party's evidence

14 at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W.*

15 *Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  Conclusory,

16 nonspecific statements in affidavits are not sufficient, and missing facts will not be

17 presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

18 **B.    Application of Summary Judgment Standard**

19   Defendants argue that Beaver was not denied a right of constitutional

20 significance.  Dkt. 39 at 4.  Defendants maintain that Beaver's claims against Dr. Deem

21 must fail because he fails to demonstrate that she substantially departed from accepted

22 professional judgment, practice or standards in treating him.  *Id.* at 7.  Additionally,

Defendants contend that although Beaver disagreed with the course of treatment he received, a disagreement over a treatment does not invoke a right of constitutional significance.

Beaver argues that Dr. Deem deviated from the standard of professional care thereby violating his constitutional rights. Beaver argues that she deviated from the standard of care when: (1) she interfered with the treatment prescribed by his primary medical doctor; (2) she refused to allow him to sign an authorization release form which would allow her to review his medical condition and records from his primary doctor; (3) she chose to take an easier and less efficacious course of treatment, which she considered to be based on her professional judgment and which "caused [him] pain and suffering in violation of [his] fourteenth amendment right to equal protection and due process right." Dkt. 42 at 8.

Defendants reply that Beaver's submissions to the Court supporting his claims are conclusory statements unsupported by facts, which are insufficient to show a genuine issue of material fact for trial. Dkt. 43 at 1-2.

**1.** *Youngberg* **Standard**

In *Youngberg*, the Supreme Court first recognized that involuntarily committed persons have a constitutional right to "minimally adequate or reasonable training to ensure safety and freedom from undue restraint." *Youngberg*, 457 U.S. at 319. The court, however, cautioned against imposing expansive obligations on the states in their care of such persons: "'the Constitution only requires that the courts make certain that professional judgment in fact was exercised. It is not appropriate for the courts to specify

which of several professionally acceptable choices should have been made.'" *Id.* at 321. The *Youngberg* court further explained the significant degree of deference to be afforded the decisions of qualified professionals:

> By so limiting judicial review of challenges to conditions in state institutions, interference by the federal judiciary with the internal operations of these institutions should be minimized.… For these reasons, the decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment.

*Id.* at 322-23. The *Youngberg* standard has been applied by the Supreme Court to differing situations involving professional discretion, including to a program for civilly committed sex offenders in Kansas. *See Kansas v. Hendricks*, 521 U.S. 346 (1997).[2]

Under *Youngberg*, a treating physician's medical treatment decisions are presumed valid, and Beaver must show a substantial departure from accepted professional judgment, practice, or standards to state a claim based on a specific action taken in relation to treatment. *Youngberg*, 457 U.S. at 323. However, as Defendants argue, Beaver has failed to submit such evidence.

---

[2] Circuit courts have also applied the *Youngberg* standard to involuntarily committed psychiatric patients. *See Kulak v. City of New York*, 88 F.3d 63, 75 (2d Cir. 1996) (applying the professional judgment standard to an involuntarily committed patient's claim that hospital employees improperly medicated him and failed to monitor the effects of the medication); *see also Patten v. Nichols*, 274 F.3d 829, 842 (4th Cir. 2001) (holding that denial of medical care claims asserted by involuntarily committed psychiatric patients must be measured under the *Youngberg* professional judgment standard).

1    Although Beaver states that Dr. Deem interfered with the treatment he received
2 from his primary provider and that she refused to allow him to sign an authorization
3 releasing his primary care physician's records to WSH, he fails to submit evidence by a
4 medical expert that the medical treatment he received from Dr. Deem amounted to a
5 substantial departure from accepted professional judgment, practice, or standards.
6 Instead, he continues to claim that Dr. Deem knowingly prescribed him a medication he
7 was allergic to, and that she failed to prescribe him pain medication for several weeks,
8 arguing in part that is what the Ninth Circuit found.  Dkt. 42 at 6.  However, Beaver
9 misreads the Ninth Circuit's opinion, which made no such factual findings.  The Ninth
10 Circuit held only that Beaver had pled facts sufficient to allege Dr. Deem's violation of a
11 clearly established constitutional right.  *See supra.* & Dkt. 29 at 2-3. In other words, his
12 allegations against Dr. Deem in her individual capacity survived a motion to dismiss.

13    Independent of Beaver's reliance on the Ninth Circuit's decision, he appears to
14 claim that his alleged allergy to ibuprofen constituted foreknowledge that naproxen
15 would cause him harm, and that Dr. Deem violated his constitutional rights by
16 prescribing it to him.  Yet, Beaver states that Dr. Xu permitted him to sign an
17 authorization releasing his records from his primary care doctor to WSH.  He thus
18 implies his prior records would demonstrate how Dr. Deem interfered with his medical
19 treatment or at least that he was allergic to NSAIDs. However, Beaver neither submits
20 those records nor any medical evidence to support his allegations that Dr. Deem's actions
21 departed from accepted professional judgment, practice, or standards.
22

### 2.   Conclusion

Based on the record before it, the Court concludes there is no genuine issue of material fact as to whether Dr. Deem knowingly prescribed Beaver medication to which she knew he was allergic such that it violated his constitutional right.  The record demonstrates that after Beaver indicated that he was allergic to ibuprofen, Dr. Deem formed a professional opinion that he was not allergic to it.  Nonetheless, she did not give Beaver ibuprofen; instead, she prescribed him naproxen. While Beaver had a reaction to naproxen, which he argues resulted from Dr. Deem's knowingly prescribing medication to which he was allergic in violation of his constitutional rights, he has submitted no evidence or legal argument to support that conclusory allegation.

Defendants argue that Beaver's only other surviving claim, that Dr. Deem failed to prescribe him pain medication for several weeks, is similarly unsupported.  Dkt. 43 at 2. Further, Defendants maintain that Beaver's disagreement with Dr. Deem's course of treatment is not sufficient to establish a genuine issue of material fact that she violated his constitutional rights. *Id*. at 2-3

The record shows that Dr. Deem prescribed acetaminophen for his pain, and supplemented that with an analgesic balm as well as physical therapy. Beaver chose not to avail himself of the mediation prescribed and now claims that Dr. Deem took a "less efficacious course of treatment" which caused him pain.  Dkt. 42 at 8. The uncontradicted evidence shows that Dr. Deem did not prescribe Beaver the medications requested because it was not medically appropriate given their addictive nature and his prior history of substance abuse. His disagreement with her course of treatment, absent medical

1  evidence supporting his claims, does not create a genuine issue of material fact that Dr.

2  Deem substantially departed from accepted professional judgment, practice or standards.

3  *Toguchi v. Soon Hwang Chung,* 391 F.3d 1051, 1059-60 (9th Cir. 2004) (holding that an

4  individual's disagreement with his course of treatment does not give rise to a 42 U.S.C. §

5  1983 claim).

## IV.  ORDER

Therefore, it is hereby **ORDERED** that Defendants' motion for summary judgment (Dkt. 39) is **GRANTED**, and this case is closed.

Dated this 12th day of February, 2013.

BENJAMIN H. SETTLE
United States District Judge